IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FEB 13 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

DAMIS FELLOVE,                    *        04-20361

      Petitioner,               *

v.                               *        Docket No. 01-763-CR-HIGHSMITH

UNITED STATES OF AMERICA,         *        Honorable Shelby Highsmith

      Respondent.               *        CIV-HIGHSMITH

MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO TITLE 28, UNITED STATES CODE, § 2255

MAGISTRATE JUDGE
WHITE

      Now respectfully comes the Petitioner, DAMIS FELLOVE, pro se, and hereby submits this timely Motion To Vacate, Set Aside, Or Correct Sentence, pursuant to Title 28, United States Code, § 2255.

      In support of this motion and as grounds therefor, petitioner submits the following factors:

      Petitioner was convicted of the offenses of: Conspiracy to Possess with Intent to Distribute Five (5) Kilograms or More of Cocaine (in violation of Title 21, United States Code, § 846) and Carrying and Possessing a Firearm During and in Relation to a Drug Trafficking Crime (in violation of Title 18, United States Code, § 924(c)(1)).  This conviction was a direct result of petitioner's guilty plea to Counts One and Six of a Nine-Count Indictment.

      On or about February 13, 2003, petitioner was sentenced to 120 months' of Count One and 60 months' imprisonment on Count Six.  The sentence of Count Six was ordered to run consecutive to the sentence imposed on Count One.

cat / div _Dode (2255)_
Case # _04-20361_
Judge _SH_    Mag _PAW_
Mon by _____
Recpt _____

* 1 *

As a result of an explicit appellate waiver in the written guilty plea, no direct appeal was filed in the United States Court of Appeals for the Eleventh Circuit.

No other motions or actions have been filed nor are pending as a result of the instant conviction.

During all relevant incidents pertaining to this action, petitioner was represented by court-appointed counsel, Mr. Allen S. Kaufman, 2900 North Dixie Highway, Suite 201, Oakland Park, Florida 33334-2666.  His telephone is: (954)-563-6624 and FAX is: (954)-563-6813.

None of the grounds presented herein for relief are available by any other means except Title 28, United States Code, § 2255.

Petitioner submits the following issues for consideration by this Court in support of his contention that the instant convictions should be vacated:

a.  There was an insufficient factual basis to support the plea;

b.  There was insufficient evidence to prove petitioner's knowledgeable involvement in a conspiracy to violate federal narcotics laws;

c.  Petitioner's conviction for using and carrying a firearm during a drug trafficking crime must be vacated; and,

d.  Petitioner suffered ineffective assistance of counsel in violation of the Sixth Amendment.

### A.   THERE WAS INSUFFICIENT FACTUAL BASIS TO SUPPORT THE PLEA:

Rule 11(f) of the Federal Rules of Criminal Procedure provide the following:

"Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

As a preliminary matter, it should be noted that Mr. Kaufman has refused to timely provide petitioner with copies of relevant documents necessary to sustain this action; therefore, reference is made to the factual proffer provided by the Government in the case of codefendant Ronald Hue Burch on December 12, 2001, before The Honorable Federico A. Moreno.  In that proffer, the Government stated its evidence as follows:

"If it please the Court, if this case were to proceed to trial, the government would prove the following facts beyond a reasonable doubt.

On May 16th of this year, the defendant, Ronald Hue Burch, told a source of information working with the Bureau of Alcohol, Tobacco & Firearms that he was interested in and experienced at committing armed narcotics robberies.

A few days later, on May 22nd, an undercover police officer met with Mr. Burch in Miami, Florida, and the undercover explained to Mr. Burch that a friend, Pedro, had information about thirty to forty kilograms of cocaine that were coming into town through the Port of Miami.

After it was removed from the Port, the undercover explained that the cocaine was to be stashed for a short period of time at a location soon to be known by the undercover officer and guarded by men with guns.

The undercover further explained that the cocaine shipment was susceptible to being robbed while it remained guarded at the stash location and that he and this other individual, Pedro, were looking for someone experienced to commit the robbery.

Mr. Burch told the undercover he was interested in robbing the cocaine.

At a later point on July 11th, Burch and the undercover met at the same location to discuss the home invasion/armed narcotics robbery scenario.

Burch stated he could easily bring three people with him who would help him commit the narcotics robbery.  He stated that the people he would bring to the next meeting were professionals and long time criminal associates.

Burch also stated his partners had choppers, meaning AK-47s or other types of assault weapons for use in the robbery; that he had all the equipment he needed for the robbery and he could even obtain bullet proof vests, if necessary.

On July 18th, Burch and the undercover met at the same location.  At this time, Burch was accompanied by **Damis Fellove,** Jeffrey Johnson and an unidentified black male.

The undercover explained the armed narcotics robbery/home invasion scenario again to Burch, this time accompanied by **Fellove[,]** Johnson and the unidentified male.

The undercover explained that at least fifty kilograms of cocaine were coming into town through the Port of Miami and would be moved to a stash house location where it would be kept for a short period of time.

While at the stash house location, the cocaine shipment was susceptible of being robbed.

Burch against stated, in response, they would do the job professionally and that they would be there for the undercover.

Burch also stated that everyone would get paid; that the undercover would love them for life and requested that the undercover telephone them just prior to the robbery with the information of the number of guards at the stash house.

Jeffrey Johnson at this time asked how many people would be guarding the cocaine and what kind of toys, meaning firearms, they would have.

Johnson also stated that he was up for the robbery, but that he needed to know how many people were guarding the shipment.

Johnson stated he was ready for some white gold and that they would split the cocaine fairly.  Johnson also asked that the undercover telephone him with the number of guards at the stash house location and stated, quote, 'We'll go in there spraying.'

**Fellove** did not speak during this meeting, but Burch stated that **Fellove** was going to be his lookout.  Burch used sign language with **Fellove** during this meeting.

At the conclusion of the meeting, **Fellove** smiled at the undercover, shook his hand and gave him a thumbs up sign.

The fourth unidentified male said he was ready saying, 'I got to eat.'

A few days later, on July 19th, Burch, **Fellove** and Johnson met with the undercover at the same location.  This time, however, the fourth subject was not present.

The undercover explained on the day of the robbery he would provide a vehicle and driver to drive them to a warehouse they could use as the staging location.

Johnson asked the undercover how many duffel bags he would need to hold the dope [in]. Johnson also asked whether there would be only two people guarding the cocaine at the stash location and explained that they had the equipment ready for the robbery but might have to buy more rounds, meaning ammunition.

There was another meeting on July 24th, where there were more questions asked by Burch and Johnson about security at the location, but finally on August 2nd at approximately 11:05 p.m., Burch, **Fellove** and Johnson met the driver, who was to take them to the staging location. The driver instructed them to put their weapons into the vehicle's trunk.

All four people drove together to the undercover warehouse location to wait for the call providing the address of the stash house.

Upon arrival at the warehouse location, Burch, **Fellove** and Johnson entered the warehouse. A black duffel [bag] was carried into the warehouse by one of the three men walking together. After entering the warehouse, Burch, **Fellove** and Johnson were arrested without incident.

A subsequent search of the warehouse entrance revealed a black duffel bag containing five rounds of twelve gauge shotgun ammunition and a roll of duct tape.

A search of the trunk of the vehicle revealed a black J.C. Higgins Model 583-20 twelve gauge bolt action shotgun with no apparent serial number.

After, Burch admitted to being involved in the attempt to rob a large quantity of cocaine and admitted to acquiring the shotgun in order to use it for a narcotics robbery.

All of the foregoing occurred in the Southern District of Florida."

Id.(Proffer provided by Brian Frazier, Assistant United States Attorney, and transcribed by Anton B. Schwartz, RPR-CP): United States v. Burch, Plea Transcript, Page 12, Line 12.

As a preliminary matter, it should be pointed out that petitioner has a severe disability because he is deaf-mute; thus, that is why he was not able to communicate or display any direct involvement in the conspiracy which was being planned in his presence.

In United States v. Allen, 804 F.2d 244 (3rd Cir. 1986), the Court held:

"Under Rule 11(f), before entering a judgment on a defendant's guilty plea, the district court must be subjectively satisfied that a factual basis exists for the plea **whether or not the defendant admits each substantive element of the charge.**   See United States v. Dayton, 604 F.2d 931 (5th Cir. 1979). The district court **must also find a factual basis for each element of the crime.**   See United States v. Trott, 779 F.2d 912 (3rd Cir. 1986)...The purpose of Rule 11(f) is to 'protect [] against false pleas, not involuntary ones.' United States v. Romanello, 425 F.Supp. 304 (D. Conn. 1975)." (emphasis added).

Id.

"To sustain a conviction for conspiracy, the government must prove beyond a reasonable doubt that a conspiracy existed, that the defendant knew of it, and that the defendant, with knowledge, voluntarily joined the conspiracy."

Id. United States v. Brazel, 102 F.3d 1120 at 1131 (11th Cir. 1997).  Cf. United States v. Lopez-Ramirez, 68 F.3d 438, 440 (11th Cir. 1995) (citation omitted).

"Mere presence, guilty knowledge, even sympathetic observation" and close association with a coconspirator are insufficient, without more, to support a conviction for conspiracy to distribute drugs.  Id. Brazel, supra, 102 F.3d at 1131 n. 4.

The Government's factual proffer mentions petitioner's name nine (9) times and includes mostly innocent and unknowing acts because petitioner could not hear or speak during the alleged conspiracy taking place around him.  In summary, here is the evidence utilized by the Government to demonstrate petitioner's alleged involvement in this conspiracy:

1.  "At this time, Burch was accompanied by Damis Fellove..."

2.  "The undercover explained the armed narcotics robbery/home invasion scenario again to Burch, this time accompanied by Fellove..."

3.  "Fellove did not speak during this meeting..."

4.  "...But Burch stated that Fellove was going to be his lookout."

5. "At the conclusion of the meeting, Fellove smiled at the undercover, shook his hand and gave him a thumbs up sign."

6. "A few days later, on July 19th, Burch, Fellove and Johnson met with the undercover at the same location."

7. "...But finally on August 2nd at approximately 11:05 p.m., Burch, Fellove and Johnson met the driver, who was to take them to the staging location."

8. "Upon arrival at the warehouse location, Burch, Fellove and Johnson entered the warehouse."

9. "After entering the warehouse, Burch, Fellove and Johnson were arrested without incident."

The aforementioned is the only evidence utilized by the Government to show petitioner had direct involvement in this conspiracy. As the Government's proffer indicates, Burch admitted to being involved in the attempt to rob a large quantity of cocaine and admitted to acquiring the shotgun in order to use it for a narcotics robbery. Id. Burch's Plea Hearing Transcript, December 12, 2001, Page 16, Line 10.

Petitioner submits the court was required to be subjectively satisfied that there is a factual basis for the plea, regardless of whether petitioner admitted each substantive element of the crime. See, Allen, supra, 804 F.2d 244.

While the Government's proffer did not prove petitioner's knowledge of the conspiracy and was thus lacking in factual basis, petitioner understands "the trial court may look to the PSI to determine, in addition to any other information, whether a sufficient factual basis is present to support the guilty plea." Howard v. United States, 135 F.3d 506 (7th Cir. 1998).

A review of petitioner's PSI indicates: "The following information was obtained from Assistant United States Attorney Brian Frazier, and a review of investigation reports prepared by the Bureau of Alcohol, Tobacco and Firearms, United States Department of Treasury." Id. PSI, Page 5, Paragraph 5. The report then proceeds to provide "facts" almost verbatim as those indicated by the Government in the codefendant's plea hearing which are quoted herein. No substantive factual differences exist between the proffer made in codefendant Burch's plea colloquy (since Mr. Kaufman has refused to provide petitioner with copies of the proffer admitted in the instant case) and the information provided to the probation officer in petitioner's case.

In further support of petitioner's contention that there was not a factual basis for the plea and the trial court was not subjectively satisfied that such a basis existed, petitioner relies on a lengthy quotation from United States v. Tunning, 69 F.3d 107 (6th Cir. 1995):

> "In McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court adopted a rule of strict compliance with the procedures of Rule 11. This rule was modified in 1983 with the adoption of Rule 11(h), which provides that variations from the requirements of Rule 11 are excusable so long as they do not affect the 'substantial rights' of the defendant. See, e.g., United States v. Goldberg, 862 F.2d 101 (6th Cir. 1988). However, this 'harmless error' analysis does not apply to appellate review of the sufficiency of the factual basis supporting the guilty plea. '[W]hile the exact method of producing a factual basis on the record is subject to a flexbile standard of review, the need to have some factual basis will continue to be a rule subject to no exceptions.' Id. at 106 (quoting United States v. Fountain, 777 F.2d 351, 357 (7th Cir. 1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986).

The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes.  Higgason v. Clark, 984 F.2d 203, 208 (7th Cir.), cert. denied, 508 U.S. 977, 113 S.Ct. 2974, 125 L.Ed.2d 672 (1993).  'The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense.' United States v. Keiswetter, 860 F.2d 992, 995 (10th Cir. 1988), modified as to remedy, 866 F.2d 1301 (10th Cir. 1989)(en banc)...

The ideal means to establish the factual basis for a guilty plea is for the district court to ask the defendant to state, in the defendant's own words, what the defendant did that he believes constitutes the crime to which he is pleading guilty.  So long as the district court ensures that the defendant's statement includes conduct--and mental state if necessary--that satisfy every element of the offense, there should be no question concerning the sufficiency of the factual basis for the guilty plea.  This 'ideal' method is by no means the only method, however.  'We recognize that the district court may determine the existence of the Rule 11(f) factual basis from a number of sources, including a statement of the record from the government prosecutorss as well as a statement from the defendant.  Goldberg, 862 F.2d at 105." (emphasis added).

Id. Tunning, supra, 69 F.3d at 111.

After review of each authorized method for determining factual basis, it is quite obvious that no factual basis existed for petitioner's plea and the guilty plea should not have been accepted by the court without the finding of facts which would support such a plea, regardless of petitioner's admissions during his colloquy with the court that he was guilty of these offenses.

The present circumstances require withdrawl of the plea and dismissal of the charges because no credible evidence of guilt was offered against petitioner. "There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances'... that justify collateral relief under § 2255."  Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 n. 4 (1974).

### B.   THERE WAS INSUFFICIENT EVIDENCE TO PROVE PETITIONER'S INVOLVEMENT IN A CONSPIRACY TO VIOLATE FEDERAL NARCOTICS LAWS:

As previously mentioned, petitioner was convicted of conspiring to possess with intent to distribute five (5) kilograms or more of cocaine. Petitioner therefore reincorporates all facts and contentions raised in Issue "A" herein by reference.

The Government's evidence against petitioner, when viewed in its favor, demonstrates: (1) codefendant Burch solely communicated with the confidential informant; (2) codefendants Burch and Johnson solely communicated with the undercover agent; (3) petitioner, while present at the meetings, had no direct involvement in the surrounding events; (4) at the conclusion of one meeting, petitioner simply smiled at the agent, shook his hand and gave a thumbs up sign only as a friendly gesture and without further communication or action; (5) petitioner accompanied his codefendants to a meeting with a driver for transport to the staging area, without knowing the true reason for these circumstances; (6) petitioner entered the warehouse with the codefendants; and, (7) petitioner was arrested wthout incident.

At no time did the Government show petitioner's intent to rob for drugs, nor was evidence presented demonstrating petitioner's actual knowledge of the specific and precise objective of the conspiracy, i.e., to rob for drugs as opposed to a potential robbery for money or other valuables.

Petitioner submits that the Government's evidence was lacking in true substance and does not meet the essential elements of proving a conspiracy to violate federal drug laws; namely, the goal (or objective) of the conspiracy beyond a reasonable doubt. When considering the evidence in the Government's favor, as we must, the Government was only able to prove a possible state offense: Burglary.

The United States Court of Appeals has reversed many convictions on similar facts as presented in the instant case.  For example, in United States v. Martinez, 83 F.3d 371 at 373 (1996), the following facts were revealed:

"In 1992, Luis Fernandez, an undercover narcotics detective with the Metro-Dade Police Department, received a phone call from Defendant Gallo.  Gallo told Fernandez that he was interested in executing a 'rip-off,' that is, in stealing narcotics.

Days later, Fernandez and Luis Escobedo, a confidential informant ("CI"), met with Gallo.  Escobedo player the role of a drug dealer, responsible for the security of 50 kilograms of cocaine, who was willing to leave the cocaine unguarded for Gallo to steal.  Gallo was to receive 25 kilograms as payment for his role in stealing the cocaine.  Gallo assured Fernandez that he was a professional who had executed rip-offs before and that he had men with guns ready to steal this 50 kilograms of cocacine.

The next day, Fernandez moved two suitcases, filled with five kilograms of real cocaine and 45 kilograms of sham cocaine, into the kitchen of an abandoned house.  Then, away from the house, Fernandez and Gallo met again in a shopping center parking lot.  At the meeting, Defendants Martinez and Gomez were present but in a separate vehicle.  Defendants then followed Fernandez to a service station where Gallo told Martinez and Gomez to pretend they were using the phone while he talked to Fernandez...

Escobedo arrived and took Gallo to the house where the cocaine was stored.  When Gallo was returned to the service station, Gomez got into Gallo's car.  Escobedo left the scene.  Defendants then went to the house: Gomez and Gallo drove in Gallo's car, and Martinez drove himself in his truck.

Defendants arrived at the house which was being watched by law enforcement agents.  Gallo and Gomez held handguns as they approached the house.  Defendants broke into the house using a crowbar, took the suitcases and began to leave.  Then Defendants were told they were under arrest....

All three Defendants were charged with conspiring to possess cocaine with the intent to distribute and with possession of cocaine with intent to distribute.  Gomez and Gallo were also charged with using a firearm in the commission of a drug offense."

Id.

* 11 *

While the aforementioned facts are similar to the instant case, the <u>Martinez</u> Court went on to state:

> "Defendants submit the government presented no evidence that Martinez and Gomez knew they were going to the house to steal cocaine.  Defendants say that all communication about cocaine were between Gallo, Fernandez and Escobedo and that Gallo never revealed the true object of the burglary to Martinez and Gomez...
>
> The government argues that, because Gallo told Fernandez he had men ready to steal the cocaine, the jury was reasonable in assuming the men he had ready were Martinez and Gomez and that Martinez and Gomez knew they were going to steal cocaine.
>
> ...We have found no evidence proving that Gomez knew he was going to the house to steal cocaine.  From this record, <u>the government cannot show that Gallo - or any one else - ever told Gomez that the true object of the burglary was cocaine</u>.  The government's argument that the jury could infer from Gallo's statement that he had 'men and guns ready' is insufficient, alone, to prove that Gomez knew he was going to steal cocaine.  So, we reverse Gomez's convictions for conspiracy to possess cocaine, possession of cocaine and use of a firearm in the commission of a drug offense."  (emphasis added).

Id. 83 F.3d at 374.

Petitioner submits that all of his convictions should likewise be vacated because, while Martinez, supra, received affirmation of his particular convictiosns due to his trial testimony, his codefendant [Gomez] was in the same position as petitioner now stands: Petitioner herein did not know, and the Government did not prove he knew, the existence of this conspiracy, his willful participation in it, and his knowledge that the objective was to rob for cocaine.

Simply put, the Government's factual proffer at the plea colloquy or information in the PSI must demonstrate that petitioner knew the purpose of the conspiracy. As Martinez, supra, held: **"From this record, the Government cannot show that Gallo – or anyone else – ever told Gomez that the true object of the burglary was cocaine."** (Emphasis added). Id. 83 F.3d at 374.

No such evidence exists in the instant record either; therefore, petitioner's convictions must also be vacated. While the guilty plea admits the facts as alleged by the Government, the trial court was required to independently determine whether each element of the charged offenses could be proven. In this case, the Government failed to prove an essential element of the offense: petitioner's knowledge of the object of the conspiracy.

The United States Court of Appeals for the Eleventh Circuit also reviewed another case presenting similar facts in United States v. Charles, 313 F.3d 1278 (2002). In reversing a codefendant's convictions, the Court found the following pertinent facts:

> "...Because the evidence was insufficient to show Elliassaint knew that the conspiracy involved drugs, we reverse his conviction...
>
> An extensive review of the record leads us to conclude that the evidence presented at trial as to Elliassaint's guilt does not meet the requisite standards of proof beyond a reasonable doubt.
>
> There is no question in this case that under the proof adduced, Elliassaint would have been guilty of conspiracy to commit burglary and robbery. However, these are not, of themselves, federal crimes. Elliassaint was charged with conspiracy to possess with the intent to distribute cocaine and conspiracy to carry a firearm in furtherance of that crime. Thus, in order to support a guilty verdict, the government had to prove beyond a reasonable doubt not only that Elliassaint participated in an agreement to burglarize a house and rob it, **but that the specific purpose was to steal cocaine in order to distribute it.**

* 13 *

"...The government argues that Elliassaint's conviction is supported because he was present on one occasion with the other defendants in the hotel room and because he drove the car transporting Charles, Herard, and Auguste to the crime scene.  Elliassaint concedes that he intended to, and in fact did, participate in a conspiracy to perform a home invasion robbery as the driver of the getaway car.  However, he contends that the evidence failed to show the requisite knowledge on his part that the specific object of the robbery was drugs and not simply money or other valuables.  He argues that his case is analogous to United States v. Martinez, 83 F.3d 371 (11th Cir. 1996), in which we reversed the conviction of an alleged coconspirator to a drug theft because the government failed to present evidence the individual had any knowledge 'that the true object of the burglary was cocaine.'  Id. at 374...

Similarly, the record in this case contains no evidence that indicates Elliassaint knew the goal of the conspiracy was to steal narcotics.  The government offered no witness or evidence at trial that showed Elliassaint had knowledge that the conspiracy involved drugs.  Indeed, there was little testimony about Elliassaint at all, and the evidence presented was limited to the fact that he accompanied Charles to a single meeting at the hotel 'war room' and drove the car used in the burglary...

Equally as important, all of the conversations regarding the purpose of the burglary were conducted in Creole, and the government presented no evidence that Elliassaint could speak or understand Creole...This is significant because the only conversation between the coconspirators that even arguable addressed drugs, and which occurred in Elliassaint's presence, was conducted in Creole.  Thus, Elliassaint was not present for any unambiguous statements about drugs and, even if he had been, no evidence presented at trial showed that Elliassaint could understand what was said...

Even when taken in the light most favorable to the government, we believe sufficient evidence did not exist for the jury to conclude Elliassaint knew that the conspiracy involved drugs.  We therefore reverse Elliassaint's convictions, both of which are predicated upon his knowledge of a conspiracy to possess cocaine."

Id.

Surprisingly, petitioner's counsel allowed, and the trial court accepted, a guilty plea to charges upon which there was insufficient evidence to sustain guilt.  This fact was well-established in the Eleventh Circuit by precedent.

While Elliassaint's convictions were reversed as a codefendant in Charles, supra, the Court realized that, if conversations occurred regarding a drug robbery, such conversations were conducted in Creole.  Just as the Court determined that no evidence was presented that Elliassaint could speak Creole, the evidence in the instant case reveals that petitioner can not hear or speak.  Thus, it can not be reasonably said that he knew about the conspiracy that he has been convicted of.

* 14 *

Based upon the foregoing facts, it is obvious that Circuit precedent requires petitioner's convictions be vacated.  At least one other circuit has established similar precedent in reviewing convictions charging conspiracy to violate federal drug laws:

"Wiseman does not challenge the existence of a conspiracy involving his codefendants.  He only challenges the sufficiency of the evidence connecting him to the conspiracy.  'In considering a challenge to the sufficiency of the evidence, we consider whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  United States v. Bautista-Avila, 6 F.3d 1360, 1362 (9th Cir. 1993) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).  To support a conviction of conspiracy, '[e]vidence has to be produced to show that [the person charged as a conspirator] had **knowledge** of the conspiracy and acted in furtherance of it.  Mere casual association with conspiring people is not enough.'  Bautista-Avila, 6 F.3d at 1362 (quoting United States v. Cloughessy, 572 F.2d 190, 191 (9th Cir. 1977)...

The totality of the government's evidence against Wiseman, even giving all reasonable intendments to that evidence, is not enough to warrant a rational jury determining that he had knowledge of this conspiracy and acted in furtherance of it."  (emphasis added).

Id. United States v. Wiseman, 25 F.3d 862 at 865 n. 2 (9th Cir. 1994).

While petitioner accepted a guilty plea, the court was required to find whether the Government's proffer satisfied each essential element of the charged offenses.  This duty was more prevalent because petitioner is a deaf-mute person and was communicating via an interpreter.  The court's failure to perform its duty to review the Government's proffer, combined with the Government's failure to present evidence demonstrating petitioner's knowledge of the conspiracy's objective, and counsel's failure to challenge this evidentiary insufficiency, requries this Court to vacate all of petitioner's convictions and sentences.

Concurrent consideration should also be given to the following statement from the court of appeals:

> "As a society, we have given much to the war on drugs, but one thing we should not sacrifice is the fundamental constitutional principle that no man or woman may be convicted of a crime except upon proof beyond a reasonable doubt."

Id. United States v. Lyons, 53 F.3d 1198 (11th Cir. 1995) (J. Carnes, dissenting).

### C. PETITIONER'S CONVICTION OF POSSESSING AND USING A FIREARM DURING A DRUG TRAFFICKING CRIME MUST BE VACATED:

As a result of the Government's failure to prove the predicate conspiracy charge against petitioner, his conviction for possession and use of a firearm during a drug trafficking crime must also be vacated.  See, United States v. Holloway, 259 F.3d 1199 (9th Cir. 2001).  Cf. United States v. Charles, supra.

The firearm possession charge was predicated upon the Government's proving petitioner's involvement in a federal drug conspiracy.  As a result of the failure to prove such conspiracy is also a failure to prove the firearm charge under Title 18, United States Code, § 924(c)(1).

### D. PETITIONER SUFFERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT:

During all times pertinent to this petition, representation was provided by Mr. Allen S. Kaufman.  Petitioner alleges that Mr. Kaufman engaged in deficient performance which caused substantial prejudice to petitioner because Mr. Kaufman's dereliction of duty and incompetence is the direct cause of petitioner's languishing in a federal prison.

Mr. Kaufman provided substantard representation because he failed to thoroughly investigate this case and to seek disclosure of relevant discovery material which was exculpatory in nature.

Had counsel performed such rudimentary and basic functions, he would have
discovered that there was no evidence to support the charged offenses; thus, no
need to encourage petitioner to accept the guilty plea.  Without Mr. Kaufman's
encouragement that petitioner enter a plea, petitioner would not have pleaded guilty
because he knew he was actually innocent of the charged offenses, but followed
the improper advice of counsel due to the threat of a life sentence as stated by
counsel if petitioner proceeded to trial and was convicted.  Thus, each of the
contentions raised above in Issues "A," "B" and "C," and hereby incorporated by
reference.

The United States Court of Appeals has repeatedly reaffirmed the standards
for review of ineffective assistance of counsel claims.  In Gallo-Chamorro v. United
States, 233 F.3d 1298 n. 1 (11th Cir. 2000), the Court stated:

> "In order to establish an ineffective assistance of counsel claim, a defendant
> must prove both deficient performance on the part of counsel and prejudice
> as a result.  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d
> 674 (1984);  Nixon v. Newsome, 888 F.2d 112, 115 (11th Cir. 1989).  Specifically,
> proof is required (1) that counsel's representation fell below an objective
> standard of reasonableness, and (2) that there is a reasonable probability
> that, but for counsel's unprofessional errors, the result of the proceeding
> would have been different.'  Darden v. Wainwright, 477 U.S. 168, 106 S.Ct.
> 2464, 91 L.Ed.2d 144 (1986); see also Williams v. Taylor, 529 U.S. 362, 120
> S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000).  Defendant must prove deficient
> performance by a preponderance of competent evidence, Strickland, 104 S.Ct.
> at 2064, and the standard is 'reasonableness under prevailing professional
> norms.'  Williams, 120 S.Ct. at 1511.  With regard to the prejudice prong
> of Strickland, 'a reasonable probability is a probability sufficient to undermine
> confidence in the outcome.'  Strickland, 466 U.S. at 694, 104 S.Ct. 2052;
> Nixon, 888 F.2d at 115."

Id. 233 F.3d at 1303.  Cf. United States v. Freixas, 332 F.3d 1314, 1319 (11th
Cir. 2003); Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002).

In Strickland, supra, the Court clarified how deficient performance can be measured.  The Court provided: "Prevailing norms of practice as reflected in the America Bar Association standards and the like...are guides to determining what is reasonable."  Id. Strickland, supra, 466 U.S. 668 n.4.

The Court obviously authorized reference to various state Codes of Professional Responsibility in determining whether counsel's conduct has met the "deficient" performance prong of Strickland.  Counsel's performance in the instant case has violated professional standards of several states and are classified as follows:

1. A lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation;

2. A lawyer shall serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters;

3. A lawyer may limit the objectives of the representation if the client consents after consultation;

4. A lawyer shall represent a client zealously and diligently within the bounds of the law;

5. A lawyer shall not intentionally fail to seek the lawful objectives of a client through reasonably available means permitted by law and the disciplinary rules;

6. A lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship;

7. A lawyer shall act with reasonable promptness in representing a client;

8. A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information;

9. A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation; and,

10. When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

Id.  District of Columbia Rules of Professional Conduct.

Petitioner has relied upon the District of Columbia Rules of Professional Conduct because those were the only rules available at the law library where he is housed and more specifically, because the Supreme Court did not specifically limit review of deficient performance solely to the professional standards where the case originated.

Individually, as well as collectively, violation of the aforementioned professional standards demonstrates Mr. Kaufman's deficient performance which was "below professional norms." Id.

Mr. Kaufman should have realized the Government's evidence was not sufficient on its face, but a thorough investigation and procurement of discovery materials would have amplified this fact. Thus, petitioner would not have pleaded guilty and be serving a lengthy prison sentence. This, quite obviously, demonstrates substantial prejudice because petitioner is not guilty of the charged offenses.

Counsel's thorough review of pertinent facts, had it been conducted, would have shown that the Eleventh Circuit Court of Appeals has established precedent specifically precluding convictions based on identical facts as those presented herein. See, e.g., United States v. Martinez, supra, and United States v. Charles, supra.

While the Court of Appeals has noted several times the standard for proving ineffective assistance of counsel, see, e.g., Nixon v. Newsome, 888 F.2d 112, 115 (11th Cir. 1989); Caderno v. United States, 256 F.3d 1213 n. 2 (11th Cir. 2001); and, Johnson v. Alabama, 256 F.3d 1156 n.25 (11th Cir. 2001), the United States Court of Appeals for the Ninth Circuit has likewise held:

"Strickland v. Washington – the most sensible place to begin evaluating any claim for ineffective assistance of counsel – teaches that the benchmark for assessing such claims must be 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' 466 U.S. at 686, 104 S.Ct. 2052. Defendant must demonstrate (1) 'that counsel's representation fell below an objective standard of reasonableness' and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' Williams v. Taylor, 529 U.S. at 390-91, quoting Strickland, 466 U.S. at 688, 694, 104 S.Ct. 2052. And as Wiggins [v. Smith], 123 S.Ct. 2527 at 2542, quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052, has reconfirmed: **'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"**

Id. Nunes v. Mueller, 2003 WL 22833789 (9th Cir. 2003).

Furthermore, the United States Court of Appeals for the Tenth Circuit has stated:

"The Sixth Amendment's right to the effective assistance of competent counsel... is rooted in 'the fundamental right to a fair trial.' Strickland v. Washington, 466 U.S. at 684, 104 S.Ct. 2052. 'Lawyers in criminal cases...are the means through which the other rights of the person on trial are secured.' United States v. Cronic, 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)... Ultimately, we judge the fairness of the trial itself through the Sixth Amendment lens looking to determine if counsel has subjected each bit of evidence, each element of the prosecution's case, to reasonable adversarial testing. Strickland, 466 U.S. at 685, 104 S.Ct. 2052." (emphasis added).

Id. Stouffer v. Reynolds, 168 F.3d 1155, 1161 n. 3 (10th Cir. 1999).

A review of the facts of this case will reveal that petitioner's rights were not secured due to counsel's ineffectiveness. The proceedings were not fair nor constitutional when looking through the Sixth Amendment lens because counsel did not "subject each bit of evidence, each element of the prosecution's case, to reasonable adversarial testing." Id. Stouffer, supra, 168 F.3d at 1161.

Petitioner, a deaf-mute person, was entitled to better representation from Mr. Kaufman.  In further support of petitioner's allegations of ineffectiveness, Mr. Kaufman responded to a request from petitioner and via correspondence dated December 15, 2003, refused to send petitioner copies of his court file for timely preparation of the instant petition.  His letter insists that prison officials coordinate petitioner's receipt and copying of his court file after telephonic arrangements are made.

Prison officials have attempted to contact Mr. Kaufman on several occasions, to no avail.  Petitioner was then left with no choice but to rely on the factual proffer and other evidence from his codefendants' files.  Thus, another obvious example of Mr. Kaufman's deficient performance and attempts to interfere with petitioner's constitutional right to prosecute his legal interests.

Mr. Kaufman's conduct, while in violation of various aforementioned professional standards, so undermined the proper functioning of the adversarial process that the proceedings cannot be relied on as having produced a just result.  Petitioner consistently maintained his innocence and only pleaded guilty when counsel insisted there was overwhelming evidence to find guilt and a life sentence would have been imposed had petitioner proceeded to trial.

Petitioner was substantially prejudiced because the evidence would not have sustained a guilty finding had he proceeded to trial and he never would have pleaded guilty absent counsel's insistence.  Counsel failed to subject the Government's case to adversarial testing, but had he done so, there is a strong probability that the outcome of these proceedings would have been different and the petitioner would have been acquitted of all charges.  Such prejudicial conduct can not be condoned by this Court.

WHEREFORE, for the foregoing reasons, in the interests of justice, and to prevent manifest injustice, Petitioner, DAMIS FELLOVE, pro se, hereby prays that this Honorable Court will vacate his convictions and sentences since there was insufficient evidence to sustain guilt, as well as find that petitioner's counsel rendered deficient performance which substantially prejudiced petitioner.  A request is also made for an evidentiary hearing.  Finally, petitioner prays for any other relief which is considered just and appropriate by this Honorable Court.

This petition is made in good faith and petitioner believes legal precedent entitles him to relief.

Respectfully submitted,

Damis Fellove 67636-004
DAMIS FELLOVE, Petitioner, pro se
Register Number - 67636-004
FEDERAL CORRECTIONAL INSTITUTION
Post Office Box 6000
Glenville, West Virginia 26351-6000

Executed this 6th day of February, 2004.

## DECLARATION UNDER PENALTY OF PERJURY

I, DAMIS FELLOVE, petitioner herein, declare and state under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Damis Fellove 67636-004
DAMIS FELLOVE, Petitioner

Verified this 6th day of February, 2004.